# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ZIG ZAG INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SCHNEIDER ELECTRIC USA, INC., <br><br> Defendant. | CIVIL ACTION NO. <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Zig Zag Innovations, LLC ("Plaintiff"), by and through its undersigned counsel, files this Original Complaint against Defendant Schneider Electric USA, Inc. ("Defendant") as follows:

## NATURE OF THE ACTION

1. This is an action for violation of 35 U.S.C. §§271(a) and 35 U.S.C. §§271(b). This is a patent infringement action to stop Defendant's infringement of United States Patent No. 8,818,532 ("the '532 patent") entitled "System and Method for Selectively Controlling and Monitoring Receptacles and Fixtures Connected to a Power Circuit in a Building" A true and correct copy of the '532 patent is attached hereto as Exhibit A. Plaintiff is the owner by assignment of the '532 patent. Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

2. Plaintiff is a limited liability company having a principal place of business located at 611 Annin Street, Philadelphia, Pennsylvania 19147.

3. Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 201 Washington Street STE 2700 Boston, MA, 02108-4403. Defendant can be served with process by

1

serving Corporation Service Company D/B/A CSC Lawyers Inco 211 E. 7th Street Suite 620 Austin, Texas 78701.  Defendant Schneider Electric USA, Inc. maintains brick and mortar offices all over the country including but not limited to the Western District of Texas some of which are located at, 9101 Burnet Rd, Austin, TX 78758.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §101 et seq., including 35 U.S.C. §§271 and 281-285. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§1331 and 1338.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1400(b). Schneider Electric USA, Inc. is subject to personal jurisdiction in this district.  Upon information and belief, Schneider Electric USA, Inc. has individually transacted business in this district and/or committed acts of patent infringement in this district and maintains brick and mortar offices all over the country including but not limited to the Western District of Texas some of which are located at, 9101 Burnet Rd, Austin, TX 78758.

6. This Court has personal jurisdiction over Schneider Electric USA, Inc. Schneider Electric USA, Inc. has conducted and does conduct business within the Western District of Texas. Schneider Electric USA, Inc., directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises (including through its web pages) its products and services (including products and/or services that infringe the '532 patent, as described more particularly below) in the United States, the State of Texas, and the Western District of Texas.  Schneider Electric USA, Inc., directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and

voluntarily placed one or more infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and/or used by consumers in the Western District of Texas.  These infringing products and/or services have been and continue to be purchased and/or used by consumers in the Western District of Texas. Schneider Electric USA, Inc. has committed acts of patent infringement within the State of Texas and, more particularly, within the Western District of Texas.

## THE ASSERTED PATENTS

7.  This lawsuit asserts causes of action for infringement of United States Patent No. 8,818,532.

8.  On August 26, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,818,532 ("the '532 Patent") entitled, "System and Method for Selectively Controlling and Monitoring Receptables and Fixtures Connected to a Power Circuit in a Bulding" to Ricardo Vasquez and assigned to Plaintiff, Zig Zag Innovations, LLC. Zig Zag Innovations, LLC is the owner by assignment of the '532 patent and holds all right, title and interest to the '532 Patent. A true and correct copy of the '532 patent is attached as Exhibit A.

9.  Claim 1 of the '532 patent describes, among other things:

In a building having multiple circuits wired to a central  circuit breaker, a system for adding controls to a targeted circuit from among said multiple circuits, said system comprising:

> a plurality of outlet assemblies, wherein each of said plurality of outlet assemblies has a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;
> an electrical power cable extending from said central circuit breaker to said plurality of outlet assemblies, wherein said electrical power cable supplies electrical current to said plurality of outlet assemblies, and wherein said electrical current is connected to said receptacle in each of said plurality of outlet assemblies only when its said on/off switch is in said on condition; and
> a control unit coupled to said electrical power cable at a point between said plurality of outlet assemblies and said central circuit breaker, wherein said control unit

> generates an addressed control signal within said electrical power cable, wherein said addressed control signal selectively controls said on/off switch in any of said plurality of outlet assemblies that have said outlet identification code that is addressed by said addressed control signal.

10. Claim 9 of the '532 patent describes, among other things:

An area circuit within a building comprising:

> an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;

> a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal.

11. The '532 Patent is owned by Zig Zag Innovations, LLC and the technology covered by said patent was developed by Zig Zag Innovations, LLC, its predecessors, and/or related companies. To the extent 35 U.S.C. §287 is determined to be applicable, Plaintiff is informed and believes its requirements have been satisfied with respect to the '532 patent and is entitled to recover pre-suit damages.

12. The Asserted Patent is valid and enforceable.

## CONTROLLING AND MONITORING FIXTURES AND RECEPTACLES CONNECTED TO A POWER CIRCUIT IN A BUILDING

13. Transmitting data through power lines has been used for computer networking and even for telephone communication wiring. Data transmission through power cables however, has primarily been used to control smart outlets, wherein the outlets can be activated or deactivated using a data transmission.

14. In such systems, the control signals are typically generated using a desktop computer. The desktop computer uses a signal converter to convert command signals into data

4

signals that can travel through the power lines.  Since data is being transmitted through active power lines, the installation and expense of installing such systems is considerable.

15. Furthermore, commercially available smart outlets are very expensive. This is due to the electronics required within the smart outlet to identify the smart outlet to the overall system. A typical home may have over one hundred outlets and dozens of lighting fixtures.

16. Being able to place an expensive smart outlet into such a multitude has made such prior art systems too expensive and too complex for use by the average home owner.  Accordingly, smart outlets are typically only installed by professionals in luxury homes and ultra-high energy efficient commercial buildings.

17. A need therefore, existed at the time of filing of the '532 patent for a system and method of simplifying the use of smart outlets.  The '532 patent created a system so that an average homeowner can afford to use the smart outlets and have the ability to install the smart outlets throughout the home.

## COUNT I – PATENT INFRINGEMENT OF U.S. PATENT NO. 8,818,532

18. Plaintiff refers to and incorporates herein the allegations of Paragraphs 1-17 above.

19. The '532 patent was duly and legally issued by the United States Patent and Trademark Office on August 26, 2014 after full and fair examination.  Plaintiff is the owner by assignment of the '532 patent and possesses all rights of recovery under the '532 patent, including the exclusive right to sue for infringement and recover past damages and obtain injunctive relief.

20. Defendant owns, uses, operates, tests, advertises, controls, sells, and/or otherwise provides systems that infringe the '532 patent.  The '532 patent provides, among other things, "an area circuit within a building comprising: (1) an outlet assembly having a receptacle; (2) an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is

configurable between an on condition and an off condition; and (3) a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal."

21. Defendant has been and is now infringing the '532 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, directly and/or indirectly through intermediaries, making, using, importing, testing, providing, supplying, distributing, selling, and/or offering for sale systems (including, without limitation, the Defendant's Reflex iC60 Ti24, iC60N, Keycard Lighting Status Indicator identified herein as the "Accused Instrumentality") that provide a system for selectively controlling and monitoring receptables and fixtures connected to a power circuit in a building, covered by one or more claims of the '532 patent to the injury of Zig Zag Innovations, LLC.  Defendant is directly and/or indirectly infringing, literally infringing, and/or infringing the '532 patent under the doctrine of equivalents.  Defendant is thus liable for infringement of the '532 patent pursuant to 35 U.S.C. § 271.

22. Schneider Electric USA, Inc. infringes claim 9 by having an area circuit within a building comprising:



**Source**:
www.schneider-electric.com/resources/sites/SCHNEIDER_ELECTRIC/content/live/FAQS/338000/FA338868/en_US/Lighting_Technical_Guide.pdf at pp. 101 (last accessed September 4, 2019)

> *an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;*



| An area circuit within a building comprising: an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition; a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal. | **Controlling power off for a hotel room by keycard**<br>• To limit electrical risks during periods of non-occupancy of the room and reduce electricity consumption, the proposed system allows all the electrical circuits used by the customer (power sockets, lighting) to be powered off except for the facilities that must be left powered up for reasons of comfort (refrigerator, air conditioning).<br><br>**Proposed solution**<br>• The room's power supply is provided by a distribution board fastened horizontally in the false ceiling at the room entrance. This arrangement does not allow the use of a modular contactor.<br>• A Reflex iC60 integrated-control circuit breaker can switch off the circuits' power supply when the keycard has been removed from its reader located at the entrance to the room.<br><br>Source: https://www.schneider-electric.com/resources/sites/SCHNEIDER_ELECTRIC/content/live/FAQS/338000/FA338868/en_US/Lighting_Technical_Guide.pdf<br><br>**Analyst comment-** Area circuit within building comprises selectively changeable outlet identification code because of capability to control all or selected on/off switch of said outlet assembly inside the room using a key card switch. The selectively changeable outlet identification code is a command signal which is transmitted by the programmable logic controller to power on/off the selected electrical devices inside rooms after insertion or removal of the card. |

*a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal.*

| An area circuit within a building comprising: an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition; a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal. | • The room's power supply is provided by a distribution board fastened horizontally in the false ceiling at the room entrance.<br>• A Reflex iC60 integrated-control circuit breaker can switch off the circuits' power supply when the keycard has been removed from its reader located at the entrance to the room.<br>• The non-priority loads must be powered via an integrated-control circuit breaker which should be able to operate in all positions to allow installation in a false ceiling.<br>• The integrated-control circuit breaker can be controlled by the presence of the keycard in its reader.<br>• The circuit breaker state (open/closed) shall be indicated at the PLC level.<br>• **Simplicity:** simplicity of the control circuit thanks to the Ti24 interface which provides a direct link with the room's PLC.<br>**Reflex iC60:** interface compatible with Acti 9 Smartlink and programmable logic controller (remote control and indications).<br><br>Source: https://www.schneider-electric.com/resources/sites/SCHNEIDER_ELECTRIC/content/live/FAQS/338000/FA338868/en_US/Lighting_Technical_Guide.pdf<br><br>**Analyst comment-** Evidence demonstrates that after inserting the card into the switch the unique ID associated with the card is identified to activate/deactivate the programmable logic controller (PLC) of associated relay or integrated control circuit breaker. Then, the controller communicates with their corresponding loads (on/off switch) through the address control signal. The address communication signal of the outlet is sent through the programmable logic controller for controlling the activation or deactivation of the outlet assembly (on/off switch) of the room electrical devices (lighting, air conditioning and TV). |

8



An area circuit within a building comprising:
an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;
a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal.

Source:
https://www.schneider-electric.com/resources/sites/SCHNEIDER_ELECTRIC/content/live/FAQS/338000/FA338868/en_US/Lighting_Technical_Guide.pdf

Analyst comment- Evidence demonstrates that integrated-control circuit breaker compatible with room's PLC is used to control lights in businesses or home building and is connected with said outlet assembly through the electrical power cable. After inserting hotel key card into the switch (receptacle), the RF-based wireless signals are transmitted to control lights or other electrical equipment (on/off switch) connected to control circuit breaker or relay. Upon detection of the unique identification code of the key card, the associated programming logic is sent as the address signal to selected electrical devices for controlling on/off switch in said outlet assembly.

23.     Defendant also infringes under 35 U.S.C. §271(b) by inducing infringement of the '532 patent in the State of Texas, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, advising, encouraging, and/or otherwise inducing others to perform the steps and/or operate the systems claimed by the '532 patent to the injury of Plaintiff.  Defendant actively instructs their customers to use the Accused Instrumentality in a way that infringes the '532 patent.  Since at least the filing date of this Complaint, Defendant has had knowledge of the '532 patent, and by continuing the actions described herein, has specific intent to induce infringement of the '532 patent pursuant to 35 U.S.C. §271(b).

24.     Specifically, Defendant advertises the Accused Instrumentality to its customers, and instructs its customers to operate the Accused Instrumentality in a way that infringes, such that when Defendant's customers follow Defendant's instructions, the '532 patent is infringed.

25.     Since at least the filing date of the Original Complaint, Defendant has had knowledge of the '532 patent pursuant to 35 U.S.C. §271(b), and by continuing the actions

described above, by continuing to sell the Accused Instrumentality and instruct their customers to use the Accused Instrumentality in an infringing manner, Defendant has had specific intent to induce infringement of the '532 patent pursuant to 35 U.S.C. §271(b).

26. Defendant's customers use the Accused Instrumentality as instructed by Defendant and in doing so, complete all elements in at least claims 1 and 9 of the '532 patent making Defendant's customers direct infringers of the '532 patent. Defendant specifically intended for its customers to infringe the '532 patent because Defendant continues to advertise and provide to its customers manuals and product information on their website that when followed necessarily infringe the '532 patent. *See* https://www.schneider-electric.com/resources/sites/SCHNEIDER_ELECTRIC/content/live/FAQS/338000/FA338868/en_US/Lighting_Technical_Guide.pdf (last accessed September 4, 2019).

27. Defendant instructs its customers, such that when Defendant's customers follow Defendant's instructions, each of said customers necessarily use the Accused Instrumentality in an infringing manner as claimed in the '532 patent making Defendant's customers direct infringers of the '532 patent.

28. Defendant also infringes under 35 U.S.C. §271(c) by contributing to infringement of the '532 patent in the State of Texas, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, offering for sale, selling, or importing the Accused Instrumentality, and/or advising, encouraging, and contributing so that others can use the systems claimed by the '532 patent to the injury of Plaintiff.

29. Specifically, pursuant to 35 U.S.C. §271(c), Defendant advertises, sells, and/or provides the Accused Instrumentality to its customers, and instructs its customers, such that when Defendant's customers follow Defendant's instructions, each of said customers necessarily

infringe one or more systems claimed in the '532 patent making Defendant's customers direct infringers of the '532 patent.

30. The Accused Instrumentalities which are provided by Defendant to its customers, are designed specifically for use by their customers in an infringing manner as claimed in the '532 patent. If the functionality that is embodied in the '532 patent were not present in the Accused Instrumentalities sold by Defendant then these said devices would not work properly for their stated purposes by Defendant in its literature about its products when used together for Defendant's stated purpose and in some cases Defendant's installation of the Accused Instrumentalities.

31. There is no substantial non-infringing use for the Accused Instrumentalities because if the devices were used in a non-infringing manner then they would not work for their stated purpose i.e. specific purpose of controlling an unlimited number of Reflex iC60 Ti24 and iC60N that are in range.

32. Defendant continues advising, encouraging, contributing, and/or otherwise inducing others to use the systems claimed by the '532 patent to the injury of Plaintiff. Since at least the filing date of the Original Complaint, Defendant has had knowledge of the '532 patent, and by continuing the actions described above, has specific intent to induce infringement of the '532 patent pursuant to 35 U.S.C. §271(b), and has further contributed to said infringement of the '532 patent by their customers by providing them with the Accused Instrumentalities so that their customers could directly infringe the '532 patent pursuant to 35 U.S.C. §271(c).

33. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

34. To the extent 35 U.S.C. §287 is determined to be applicable, Plaintiff is informed and believes its requirements have been satisfied with respect to the '532 patent.

35. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of the Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. §284.

## JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against the Defendant, and that the Court grant Plaintiff the following relief:

A. a judgment that Defendant directly and/or indirectly infringes one or more claims of the '532 patent;

B. award Plaintiff damages in an amount adequate to compensate Plaintiff for Defendant's infringing products' infringement of the claims of the '532 patent, but in no event less than a reasonable royalty, supplemental damages and enhanced damages for any continuing post-verdict infringement until entry of the final judgment with an accounting as needed, under 35 U.S.C. §284;

C. award Plaintiff enhanced damages of three times the amount of the final judgement for Defendant's pre-suit knowledge of the '532 patent and willful infringement of the '532 patent pursuant to 35 U.S.C. §284;

D. a permanent injunction pursuant to 35 U.S.C. §283, enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '532 patent, or such other equitable relief the Court determines is warranted;

E. award Plaintiff pre-judgment interest and post-judgment interest on the damages awarded, including pre-judgment interest, pursuant to 35 U.S.C. §284, from the date of each act of infringement of the '532 patent by Defendant to the day a damages judgment is entered, and an award of post-judgment interest, pursuant to 28 U.S.C. §1961, continuing until such judgment is paid, at the maximum rate allowed by law; and an accounting of all damages not presented at trial;

F. a judgment and order finding this to be an exceptional case and requiring defendant to pay the costs of this action (including all disbursements), and attorneys' fees pursuant to 35 U.S.C. §285;

G. award a compulsory future royalty for the '532 patent; and award such further relief as the Court deems just and proper.

Dated: November 6, 2019

Respectfully submitted,

By: */s/ Paul O'Finan*
**HANSLEY LAW FIRM, PLLC**
Paul W. O'Finan
Texas Bar No.: 24027376
13355 Noel Rd. STE 1100
Dallas, Texas 75240
Telephone: (972) 528-9321 Ext. 1000
Facsimile: (972) 370-3559
Email: pofinan@hansleyfirm.com
www.hansleyfirm.com
**ATTORNEYS FOR PLAINTIFF ZIG ZAG INNOVATIONS, LLC**